IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

VANESSA BERTRAND,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

CIVIL ACTION FILE

NUMBER 1:17-cv-1598-TCB

## O R D E R

This case comes before the Court on Defendant United States of America's motion to transfer this case to the United States District Court for the Southern District of Florida [5].

## I.    Background[1]

On February 24, 2015, Bertrand went to Borinquen Health Care Center, a federally qualified health center pursuant to 28 U.S.C. §§ 2401(b), 2675(a) located in Miami, Florida, for a mental health evaluation. She returned for follow-up appointments in March, April,

---

[1] The facts in this section are taken as alleged in Bertrand's complaint [1].

and June. At her final appointment, the BHCC psychiatrist, Dr. Nancy Navarro-Gonzalez, prescribed Lamictal for Bertrand, with a starting dosage higher than the manufacturer's recommended starting dosage. Lamictal contained a black-box warning that the drug has caused "life-threatening serious rashes" and that exceeding the recommended initial dose "may increase the risk of rash." [1] at 26–27. Dr. Navarro-Gonzalez failed to warn Bertrand about these risks.

On June 8, Bertrand filled her prescription and began taking the medicine as prescribed. Beginning on June 21, she began developing symptoms attributable to side effects from taking Lamictal, resulting in multiple visits to North Shore Hospital in Miami, Florida.

On June 23, Bertrand went to the Jackson Health System in Miami, Florida, where she was then admitted and hospitalized until July 20 with a diagnosis of Stevens-Johnson Syndrome ("SJS") and Toxic Epidermal Necrolysis ("TEN"). Her hospitalization involved "intense and painful medical treatment" and "numerous painful symptoms and sequelae of SJS/TEN." *Id.* at 38–39.

Following her discharge, Bertrand moved to Georgia to be with her daughter, who had moved to stay with family during Bertrand's hospitalization. Bertrand has continued to receive medical treatment in Georgia. She alleges that her injuries were caused by the negligence of Dr. Navarro-Gonzalez in prescribing Lamictal to her. The United States has moved to transfer this case to the Southern District of Florida.

## II.   Discussion

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." There is no dispute that this action "might have been brought" in the Southern District of Florida, so the Court need only determine whether transferring this action to that court would serve "the convenience of parties and witnesses" and the "interest of justice." The decision to transfer a case under Section 1404(a) rests within the Court's sound discretion. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 654–55 (11th Cir. 1993).

In determining whether a case should be transferred to another court, relevant factors include, but are not limited to (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

The United States, as the party seeking transfer, bears the burden of establishing that the balance of these factors favors transfer. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). It must make "a strong case for transfer and if the transfer would merely shift inconvenience from one party to the other, or if the balance of all factors is but slightly in favor of the movant, plaintiff's choice of forum should not be disturbed and transfer should be denied." *Bell v. KMart Corp.*, 848 F. Supp. 996, 998 (N.D. Ga. 1994) (quoting *Grey v. Cont'l Mktg. Assocs.,*

*Inc.*, 315 F. Supp. 826, 831 (N.D. Ga. 1970)). Moreover, "federal courts traditionally have accorded a plaintiff's choice of forum considerable deference." *In re Ricoh Corp.,* 870 F.2d at 573. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Moore v. McKibbon Bros., Inc.*, 41 F. Supp. 2d 1350, 1356 (N.D. Ga. 1998) (alteration in original) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)).

### A.    Convenience of Witnesses

"The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses." *Elec. Transaction Network v. Katz*, 734 F. Supp. 492, 501–02 (N.D. Ga. 1989). For purposes of this factor, the focus of the Court's inquiry should be on "key witnesses," i.e., those whose knowledge and anticipated testimony is relevant not only to damages, but also to liability. *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1357 (N.D. Ga. 2004); *McNair v. Monsanto Co.,* 279 F. Supp.

2d 1290, 1311 (M.D. Ga. 2003).[2] The true concern is not merely "convenience" of the witnesses, but the likelihood that key witnesses will be able to testify at trial. *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361–62 (S.D. Fla. 2001). Courts accordingly give less weight to inconvenience to witnesses who are employed by a party, because the party can ensure their presence at trial. *Id.*; *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) ("[This factor's] significance is diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party."); *Ramsey*, 323 F. Supp. 2d at 1356 (noting that the location of party witnesses, including individuals "closely aligned with a party," is accorded less weight in the transfer analysis).

Other than Bertrand, every witness who has information regarding the alleged liability of the United States is in Florida.

---

[2] Specifically, the Court must determine whether the witnesses have actual knowledge about the issues in the case, where they are located, and whether it will be more convenient for them if the action is in Georgia or Florida. *See Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1190 (S.D. Fla. 2007).

Specifically, Dr. Matos-Gonzalez, the first physician who saw Bertrand at BHCC, has knowledge of the evaluations, diagnoses, and documentation Bertrand alleges. The United States further points to Bertrand's previous mental health provider(s), who would testify that Bertrand did not have bipolar disorder (and, thus, support Bertrand's contention that the Lamictal prescription was improper). The pharmacist who dispensed the Lamictal also is in Florida, and the United States asserts that any liability would be shared by him. *See Oleckna v. Daytona Disc. Pharmacy*, 162 So. 3d 178, 182 (Fla. Dist. Ct. App. 2015) (noting that Florida law imposes upon pharmacists a "duty to use due and proper care in filling a prescription [that] extends beyond simply following the prescribing physician's directions," a duty that cannot be "satisfied by 'robotic compliance' with the instructions of the prescribing physician."); Fla. Stat. § 768.81(3) ("In a negligence action, the court shall enter judgment against each party liable on the basis of such party's percentage of fault and not on the basis of the doctrine of joint and several liability."). The medical providers who first diagnosed Bertrand with SJS/TEN secondary to Lamictal are from the

North Shore Hospital in Miami (where Bertrand was hospitalized from June 3 to July 20); Bertrand has made allegations regarding the treatment she received there.[3] Transferring this case to Florida "will alleviate the burden on [these witnesses], and will permit the use of compulsory process to secure live testimony." See *Ramsey*, 323 F. Supp. 2d at 1357.

Bertrand contends that her current treating physicians are in Georgia. However, these damages witnesses "are accorded less weight due to the fact that without liability, there are no damages to recover." *Id.* She also contends that her mother, daughter, and sister (all residing in Douglasville, Georgia) are likely to be witnesses. However, Bertrand's family is presumed to be "more willing to travel to a different forum than the key liability witnesses" in Florida. *Id.*

---

[3] Bertrand contends that these witnesses would not be inconvenienced because they could merely give depositions in Florida. However, as another court in this district has stated in response to such an argument, "the court's ability to use compulsory process to obtain live testimony of key witnesses, as well as the cost and convenience of producing them for trial, is an important factor and cannot be so easily dismissed by the parties." *Nam v. U.S. Xpress, Inc.*, No. 1:10-cv-3924-AT, 2011 WL 1598835, at *8 (N.D. Ga. Apr. 27, 2011).

Having considered the location of key potential witnesses, and the effect of transferring this action to the Southern District of Florida, the Court concludes that transfer would not merely shift the inconvenience from one party to another. Consequently, this factor weighs in favor of transfer. *See Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1300–01 (S.D. Fla. 2002) (determining that transfer was appropriate where the majority of key witnesses—including the non-moving party's own witnesses—resided in the transferee district, thus eliminating the possibility that the moving party was simply trying to shift the inconvenience to the non-moving party's witnesses).

### B. Location of Relevant Documents

Most relevant documents (from Bertrand's prescription, hospitalization, and initial treatment) likely are in Florida. However, district courts in this circuit have routinely found that the location of physical documents does not play a substantial role in the venue analysis due to electronic storage and transmission of information. *See, e.g.*, *Wi-LAN USA, Inc. v. Apple, Inc.*, No. 12-cv-24318-KMM, 2013 WL 1343535, at *3 (S.D. Fla. Apr. 2, 2013); *Carroll v. Tex. Instruments,*

9

*Inc.*, 910 F. Supp. 2d 1331, 1339 (M.D. Ala. 2012); *Polyform A.G.P., Inc. v. Airlite Plastics Co.*, 4:10-cv-43-CDL, 2010 WL 4068603, at *4 (M.D. Ga. Oct. 15, 2010).

In the digital age, technology has significantly reduced the burden imposed by litigating in a foreign forum, and although this consideration is not yet completely irrelevant, the Court affords it only minimal consideration. *See Polyform*, 2010 WL 4068603, at *4 (concluding that the physical location of relevant documents "is not particularly significant given the widespread use of electronic document production"). The Court finds that this factor weighs slightly in favor of transfer but that it is to be given little weight in the overall analysis.

C.    **Convenience of the Parties**

The United States contends that, particularly due to the location of witnesses, it is more convenient for it to litigate this dispute in Florida. Bertrand, residing in this district (and stating that she does not want to disrupt her daughter's schedule), prefers to litigate in Georgia. Accordingly, this factor is neutral.

### D. Locus of Operative Facts

All relevant facts (the prescription of the Lamictal, the alleged damages, and the initial treatment) occurred in Florida.[4] As such, the United States has adequately demonstrated that Florida is the locus of operative facts, and this factor weighs heavily in favor of transfer to the Southern District of Florida.

### E. Availability of Compulsory Process

This factor favors transfer to the district where the court has absolute subpoena power to compel attendance at depositions and at trial. Rules 45(c)(1) and (2) of the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than one hundred miles. "This factor is generally relevant only with respect to third-party witnesses, because employee witnesses are subject to compulsory process in either forum by virtue of their employment relationship with a party." *Pecorino v. Vutec Corp.*, 934 F. Supp. 2d 422,

---

[4] The Court is not persuaded by Bertrand's attempt to persuade the Court that her continuing effects of the alleged injury constitute operative facts in Georgia. *Polyform*, 2010 WL 4068603, at *5 ("The fact that those acts may produce damage in this District is not sufficient to shift the locus of operative facts . . . to this district.").

11

442 (E.D.N.Y. 2012) (citing *Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.,* 119 F. Supp. 2d 433, 438 (S.D.N.Y. 2000)). As discussed above, the key non-party witnesses reside in the Southern District of Florida, and could not be compelled to testify in this district.[5] This factor thus weighs in favor of transfer.

### F. Relative Means of the Parties

Bertrand contends, and the United States does not dispute, that her means are significantly less than those of the United States. However, because the majority of witnesses and the locus of operative facts are in Florida, it will be costly for both parties if this action were to remain in this Court. Therefore, this factor weighs only slightly against transfer.

### G. Familiarity with Governing Law

The governing law is the state law of Florida. *See Schippers v. United States*, 715 F.3d 879, 886 (11th Cir. 2013) ("[B]ecause the wrongful acts alleged occurred in Florida, Florida law [] governs this

---

[5] Despite Bertrand's argument that the United States has not demonstrated that the witnesses are not willing to testify, there is no presumption that a non-party witness will be willing to testify. *See Ramsey*, 323 F. Supp. 2d at 1356.

12

action."). This case will involve the application of Florida negligence law with respect to the duty of care owed by both physicians and pharmacists (which is not identical to that in Georgia), and this factor thus weighs in favor of transfer. *See Great N. Ins. Co. v. Emerson Elec. Co.*, No. 1:12-cv-02775-MHS, 2012 WL 12875512, at *4 (N.D. Ga. Oct. 25, 2012) ("Although this Court is fully capable of applying Florida law, the Southern District of Florida is likely to have more experience and familiarity with the state laws of Florida and would be able to more efficiently adjudicate plaintiffs' claims."). This factor therefore weighs in favor of transfer.

### H.  Deference to Bertrand's Choice of Forum

As noted above, the Court generally gives significant weight to the plaintiff's choice of forum. "A plaintiff's choice of forum is afforded less weight, however, if the majority of the operative events occurred elsewhere." *Merswin v. Williams Cos.*, No. 1:08-cv-2177-TWT, 2009 WL 249340, at *6 (N.D. Ga. Jan. 30, 2009). Here, as noted, all operative events occurred in Florida. This consideration therefore weighs only slightly against transfer.

### I. Trial Efficiency and the Interest of Justice

In addition to the private concerns of the parties, the Court must consider the public interest factors in "the interest of justice." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29–30 (1988). This case is in its early stages, so a transfer would not cause undue delay. Further, as discussed above, it would be more efficient for witnesses if this case were to proceed in Florida. Finally, the median case in the Northern District of Georgia is brought to trial in 28.7 months, as opposed to 17 months in the Southern District of Florida. *See* UNITED STATES COURTS, Table C-5, *U.S. District Courts–Median Time Intervals from Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending September 30, 2016*, 3, http://www.uscourts.gov/file/21792/download (last visited Nov. 29, 2017). The Court concludes that this factor weighs in favor of transfer.[6]

---

[6] The Court is not persuaded by Bertrand's argument that she would not live in Georgia were it not for the negligence of the United States' employee. This argument presumes liability at the forefront, which the Court is unwilling to do.

Considering the totality of the circumstances, the Court concludes that this action should be transferred to the Southern District of Florida.

### III. Conclusion

For the foregoing reasons, the United States' motion to transfer [5] is granted. The Clerk is directed to close this case.

IT IS SO ORDERED this 30th day of November, 2017.

_____
Timothy C. Batten, Sr.
United States District Judge